**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1449
_____

UNITED STATES OF AMERICA

v.

HAKIM WILLIAMS,
                            Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-18-cr-00579-004)
District Judge: Honorable Gerald J. Pappert
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
October 3, 2023
_____

Before: SHWARTZ, MATEY, and SCIRICA, *Circuit Judges*.

(Filed: February 15, 2024)
_____

OPINION[*]
_____

_____

[*]This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

MATEY, *Circuit Judge*.

Hakim Williams challenges his sentence for crimes he committed as a member of a drug trafficking organization. According to Williams, the United States departed from the parties' plea agreement and the District Court imposed an unreasonable period of incarceration after the Judge improperly testified as a witness. But seeing no error, we will affirm the District Court's judgment.

**I.**

Williams was charged with narcotics and firearms offenses. Law enforcement also suspected that Williams tried to intimidate a cooperating witness at a pretrial hearing, and then again during the trial of a co-conspirator. Williams later pleaded guilty to several crimes.[1] His written plea agreement included an appellate waiver and stipulations about the application of the Sentencing Guidelines anticipating Williams should receive a three-level downward adjustment for accepting responsibility and fully cooperating with the Justice Department under U.S.S.G. § 3E1.1. The initial presentence report (PSR) concluded that Williams's total offense level was 37, giving him a Guidelines range of 292 to 365 months' imprisonment.

---

[1] Williams pleaded guilty to three offenses: (1) conspiracy to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, 50 grams or more of methamphetamine, and marijuana, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A), and (b)(1)(D); (2) possession with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, 50 grams or more of methamphetamine, and a mixture and substance containing a detectable amount of heroin and a detectable amount of fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), and (b)(1)(C); and (3) possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1).

Before sentencing, the United States changed course and objected to the PSR, arguing that the District Court should impose a two-level obstruction enhancement based on Williams's repeated attempts at witness intimidation. And at Williams's sentencing hearing, the United States offered testimony from Agent Elizabeth Becker and a cooperating witness to demonstrate that Williams had repeatedly intimidated witnesses.[2]

Ruling on the motion, the District Court commented that the intimidation was "plain as day. It was blatant. It was so blatant; my brain wasn't processing what my eyes were telling me was happening. And had I been more on the ball, I'd have had him pinched right there." App. 176. The Court credited Agent Becker's testimony "because it corroborates my own memory, and I have a very clear memory of this because it's the only time anything like this has ever happened to me." App. 187. And the Court concluded: "I firsthand saw it. There is no doubt what he was doing. None. And there is no doubt of the effect it had on the testifying witness because he turned to me in an effort to alert me to the problem." App. 188.

As a result, the District Court increased Williams's offense level by two levels under U.S.S.G. § 3C1.1 and denied a decrease for acceptance of responsibility under U.S.S.G. § 3E1.1, producing an advisory sentencing range of 360 months to life

---

[2] On top of the intimidation attempted at the pretrial hearing and trial, Agent Becker testified about a third occurrence. A copy of a cooperating witness's plea agreement was found in Williams's cell. When other inmates learned about the agreement and cooperation addendum, the witness was attacked.

imprisonment. The Court then imposed a sentence of 300 months' imprisonment, a downward variance from the calculated range.[3] Williams timely appealed his sentence.[4]

**II.**

Williams argues the United States breached the plea agreement by seeking an obstruction enhancement and opposing points for acceptance of responsibility based on conduct (the intimidation) known to the prosecution when the agreement was signed. A breach, Williams reasons, that constitutes a miscarriage of justice and voids the appellate waiver. Williams also argues that the sentencing court's findings of fact were clearly erroneous, and the sentence was an abuse of discretion. Williams also contends that the District Court judge violated his due process rights by testifying during the sentencing hearing. Behavior, Williams concludes, that showed bias requiring the Judge's recusal. We find no plain error in any of these arguments.[5]

**A.      The Plea Agreement**

Plea agreements are analyzed as contracts, with ambiguities "typically construe[d]" against the United States. *United States v. Yusuf*, 993 F.3d 167, 176 (3d Cir.

---

[3] The District Court pointed to Williams's age and "personal and family history"—including Williams's employment record, family ties and responsibilities, and "mental health . . . issues"—as grounds for the downward variance. App. 256, 259.

[4] The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

[5] Williams did not make these arguments in the District Court, so our review is limited to plain error. *See United States v. Adair*, 38 F.4th 341, 355 (3d Cir. 2022) (citation omitted). Williams must show a plain error of law that affected a substantial right, where "failure to correct the error would 'seriously affect[] the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Defreitas*, 29 F.4th 135, 144 (3d Cir. 2022) (alteration in original) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)).

2021) (citation omitted). But the defendant must contemporaneously object during the sentencing hearing and specifically argue that the United States "violat[ed] its obligations under the plea agreement" to preserve the issue for appeal. *Puckett v. United States*, 556 U.S. 129, 133, 135 (2009).

Williams raised no claim of breach before the District Court. Indeed, at the end of the sentencing hearing, Williams's counsel stated he had no objections "with respect to any procedural or substantive matters." App. 262. We therefore review the United States's departure from the plea agreement for plain error and find none. *Puckett*, 556 U.S. at 134–36, 143.

Moreover, even under plain error review, there was no breach of the plea agreement. Section 12 of the plea agreement permitted the United States to argue "the applicability of . . . other provision[s] of the Sentencing Guidelines, including . . . adjustments," such as for obstruction of justice. App. 26. Thus, the United States did not breach by arguing for that enhancement. Furthermore, although the United States argued in its objections to the initial PSR that the District Court should deny Williams an acceptance of responsibility reduction based on post-plea acts of intimidation, or pre- and post-plea acts of intimidation together, at sentencing, the United States did not oppose an acceptance of responsibility reduction. For these reasons, the United States did not breach the plea agreement.

B.     The Appellate Waiver

Appellate waivers in plea agreements are valid, so long as the waivers were "entered into knowingly and voluntarily." *United States v. Khattak*, 273 F.3d 557, 562

5

(3d Cir. 2001). An appellate waiver may be invalidated, however, if a District Court

made "an error amounting to a miscarriage of justice." *Id.* (citation omitted); *see United*

*States v. Jackson*, 523 F.3d 234, 242 (3d Cir. 2008). In this case, Williams does not argue

that he entered into the plea agreement unknowingly or involuntarily, and nothing in the

record reveals otherwise. And Williams was not prejudiced by the United States's

sentencing arguments, as his sentence is neither procedurally nor substantively

unreasonable.[6] Therefore, the appellate waiver in Williams's plea agreement is valid and

enforceable.[7]

---

[6] Williams's sentence was procedurally reasonable because the District Court properly calculated the Guidelines range, considered motions to depart, and meaningfully addressed the relevant factors set out in 18 U.S.C. § 3553. *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). Williams has also not shown that his sentence rested on "a clearly erroneous factual conclusion or an erroneous legal conclusion." *United States v. Tomko*, 562 F.3d 558, 567–68 (3d Cir. 2009) (en banc) (citation omitted). Williams's sentence was also substantively reasonable. The District Court considered the "totality of the circumstances" against the factors outlined in § 3553(a). The Court described the gravity of the offense and the unique nature of the obstruction while also noting the difficulty of Williams's circumstances and praising the support his family provided. In light of Williams's personal history, the District Court granted a five-year downward variance, a significant reduction. Taken together, it cannot be said that "no reasonable sentencing court would have imposed the same sentence." *United States v. Shah*, 43 F.4th 356, 367 (3d Cir. 2022) (internal quotation marks and citation omitted).

[7] Although we need not reach the issue of the District Court's impartiality because of the appellate waiver, we would find no error in any event. "[O]pinions formed by the judge on the basis of . . . prior proceedings[] do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Williams has not pointed to any specific statements or actions showing such antagonism, and no reasonable observer would perceive bias based on the conduct alleged and facts presented. *See United States v. Ciavarella*, 716 F.3d 705, 719 (3d Cir. 2013) (applying the "reasonable observer" standard to a recusal inquiry). The District Court based its assessment of Williams's conduct on what it *saw* in the prior hearings rather than on any of Williams's personal characteristics.

\* \* \*

For these reasons we will affirm the District Court's sentence.